Nos. 20-17363, 20-17364, 21-15193, 21-15194

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DAVID AND NATASHA WIT, ET AL.,
*Plaintiffs-Appellees*,

v.

UNITED BEHAVIORAL HEALTH,
*Defendant-Appellant.*

GARY ALEXANDER, ET AL.,
*Plaintiffs-Appellees*,

v.

UNITED BEHAVIORAL HEALTH,
*Defendant-Appellant.*

On Appeal from the United States District Court for the Northern District of California
Nos. 14-cv-2346-JCS, 14-cv-5337-JCS
Hon. Joseph C. Spero

**BRIEF OF RHODE ISLAND, COLORADO, CONNECTICUT, DELAWARE, ILLINOIS, MAINE, MARYLAND, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW YORK, OREGON, VERMONT, WASHINGTON, AND THE DISTRICT OF COLUMBIA AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES AND REHEARING EN BANC**

PETER F. NERONHA
*Attorney General*
Michael Field
Sarah W. Rice
Assistant Attorneys General
Julia Harvey
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
150 South Main Street
Providence, RI 02903
(401) 274-4400

March 17, 2023

*Counsel for Amicus Rhode Island*
*(Additional counsel listed after signature block)*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION AND INTERESTS OF AMICI CURIAE ................................. 1

ARGUMENT .......................................................................................... 4

   I.    Denying Access to a Reprocessing Remedy Denies Access to Care for
members of the Plaintiff Classes and Creates Barriers to Effective
Enforcement of ERISA Plans ...................................................... 5

   II.   The Panel Decision Exacerbates Inadequate Access to Mental Health and
Substance Use Disorder Services in the Amici States ............................ 12

CONCLUSION ..................................................................................... 18

<u>**TABLE OF AUTHORITIES**</u>

<u>**CASE LAW**</u>

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)...................................... 6

*Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724 (1985) .............. 8

*Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002).................................... 8

*Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455 (9th Cir. 1996) .............................................................. 6

*Sgro v. Danone Waters of North America, Inc*., 532 F.3d 940 (9th Cir. 2008)........ 8

*Vizcaino v. Microsoft Corp*., 120 F.3d 1006 (9th Cir. 1997).................................. 7

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................ 7

*Wit v. United Behavioral Health*, 58 F.4th 1080 (9th Cir. 2023) ............................ 6

<u>**STATUTES**</u>

29 U.S.C. § 1144 ..................................................................................... 8

29 U.S.C. § 1001 ................................................................................... 12

Cal. Ins. Code § 10144.5 .................................................................. 9, 10

Colo. Rev. Stat. § 10-16-104 ................................................................. 9

Conn. Gen. Stat. § 38a-488c ................................................................. 9

Conn. Gen. Stat. § 38a-514c ................................................................. 9

Conn. Gen. Stat. § 38a-591c ................................................................. 9

Del. Code Ann. tit. 31, § 525 ................................................................ 9

Del. Code Ann. tit. 31, § 525 .............................................................. 10

215 Ill. Comp. Stat. § 5/370c ................................................................. 9

Md. Code Ann., Ins., § 15-802 .............................................................. 9

N.H. Rev. Stat. Ann. § 420-J:16 ..................................................... 9, 10

N.J. Stat. Ann. § 17:48-6v ...................................................................... 9

N.Y. Ins. Law § 3216 .............................................................................. 9

N.Y. Ins. Law § 4902 .............................................................................. 9

Tenn. Code Ann. § 56-7-2360 ............................................................... 9

Tenn. Code Ann. § 56-2-305 ............................................................... 10

R.I. Gen. Laws § 27-38.2-1 ...................................................................8

R.I. Gen. Laws § 42-14.5-3................................................................. 10

W. Va. Code § 33-15-4r.......................................................................... 9

W. Va. Code § 33-16-3cc ....................................................................... 9

W. Va. Code § 33-24-7r.......................................................................... 9

W. Va. Code § 33-25-8o.......................................................................... 9

W. Va. Code § 33-25A-8r........................................................................ 9

## **REGULATIONS**

N.J. Admin. Code § 10:163-2.1 ..............................................................9

28 Tex. Admin. Code § 3.8011................................................................ 9

Wash. Admin. Code § 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 ....................................................... 8

Wash. Admin. Code § 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 ..................................................... 10

## OTHER AUTHORITIES

American Psychological Association, *Health and Homelessness* (2011), https://www.apa.org/pi/ses/resources/publications/homelessness-health ... 12

Centers for Disease Control and Prevention, National Center for Health Statistics. Multiple Cause of Death Files 1999-2020 on CDC WONDER Online Database, released in 2021, http://wonder.cdc.gov/mcd-icd10.html (Last accessed Mar. 5, 2023) ................................................................................. 14

Connecticut Department of Public Health, *Unintentional Drug Overdose Deaths in Connecticut: A Fact Sheet – 2021* (May 2022), https://portal.ct.gov/-/media/DPH/Injury-Prevention/Opioid-Overdose-Data/Fact-Sheets/2021-Fact-Sheet_Unintentional-Drug-Overdose-Deaths_Updated-on-5-18-2022.pdf .......................................................................................................... 14

Consumer Reports National Research Center, *Surprise Medical Bills Survey* (May 5, 2015), https://advocacy.consumerreports.org/wpcontent/uploads/2015/05/CY-2015-SURPRISE -MEDICAL-BILLS-SURVEY -REPORT-PUBLIC.pdf ..................................................................................... 11

Geraldine Dallek & Karen Pollitz, *External Review of Health Plan Decisions: An Update*, KAISER FAMILY FOUNDATION (May 2000), https://www.kff.org/wp-content/uploads/2013/01/external-review.pdf ....... 11

G. Wayne Miller, *Incarcerated: Hundreds who need mental-health care forced into ACI*, PROVIDENCE J (Dec. 13, 2014), https://www.providencejournal.com/story/lifestyle/health-fitness/2014/12/14/20141213-mental-health-in-rhode-island-hundreds-who-need-care-forced-into-aci-ece/33827141007/............................................... 17

HealthSourceRI, "Rhode Island Achieves Lowest Ever Uninsured Rate, Survey Finds" (Aug. 30, 2022), https://healthsourceri.com/rhode-island-achieves-lowest-ever-uninsured-rate-survey-finds/...................................................... 15

Hearing on H-5837 Before the H. Comm. on Corps., 2015 Leg. (R.I. Apr. 7, 2015) (written testimony of David Spencer, Executive Director of the Drug and Alcohol Treatment Association of Rhode Island) ........................................ 16

Hearing on H-5837 Before the H. Comm. on Corps., 2015 Leg. (R.I. Apr. 7, 2015) (letter by Michael R. Souza, President of the Hospital Association of Rhode Island) ........................................................................................................ 16

iv

Illinois Department of Insurance, *Compliance Actions Under State and Federal Mental Health and Substance Use Disorder Coverage and Parity Laws* (Aug. 2020), https://idoi.illinois.gov/content/dam/soi/en/web/insurance /sites/insurance/reports/reports/idoi-hfs-annual-report-compliance-mental-health-and-substance-coverage-and-parity-laws-08-2020.pdf......... 10

Illinois Department of Public Health, *Statewide Semiannual Opioid Report* (Aug. 2021), https://dph.illinois.gov/content/dam/soi/en/web/idph/publications /idph/topics-and-services/opioids/idphdata/idph-semiannual-opioid-report-august-2021.pdf ........................................................................................ 14

Jennifer M. Reingle Gonzalez & Nadine M. Connell, *Mental Health of Prisoners: Identifying Barriers to Mental Health Treatment and Medication Continuity*, 104 Am. J. Public Health 2328 (2014) ...................................................... 17

Kaiser Family Foundation, Adults Reporting Unmet Need for Mental Health Treatment in the Past Year Because of Cost, 2018-2019, https://www.kff.org/other/state-indicator/adults-reporting-unmet-need-for-mental-health-treatment-in-the-past-year-because-of-cost/?current Timeframe=0&sortModel=%7B%22colId%22:%22Location%22, %22sort%22:%22asc%22%7D (Last accessed Mar. 10, 2023).................. 15

Kaiser Family Foundation, Adults with Mental Illness in Past Year Who Did Not Receive Treatment, 2018-2019, https://www.kff.org/other/state-indicator/ adults-with-mental-illness-in-past-year-who-did-not-receive-treatment /?currentTimeframe=0&sortModel=%7B%22colId%22:%22Location% 22,%22sort%22:%22asc%22%7D (Last accessed Mar. 5, 2023)................ 14

Karen Pollitz, *Consumer Appeal Rights in Private Health Coverage*, Kaiser Family Foundation (Dec. 10, 2021), https://www.kff.org/private-insurance/issue-brief/consumer-appeal-rights-in-private-health-coverage/..11

Kevin M. Simon & Michaela Beder, *Addressing Poverty and Mental Illness*, 23 Psychiatric Times 7 (2018) .................................................................... 17

Laurie-Marie Pisciotta, The Criminalization of Mental Illness (Dec. 6, 2020), https://mhari.org/the-criminalization-of-mental-illness/ ............................ 17

Matt Richtel, *It's Life or Death: The Mental Health Crisis Among U.S. Teens*, N.Y. Times (Apr. 23, 2022), https://www.nytimes.com/2022/04/23/health/mental-health-crisis-teens.html ............................................................................................. 13

Mental Health America, Access to Care Data 2022,
https://mhanational.org/issues/2022/mental-health-america-access-
care-data (Last accessed Mar. 5, 2023). .................................................. 2, 14

Mental Health Association of Rhode Island, *Network Adequacy: A Survey of
Rhode Island's Behavioral Health Provider Network* (2021),
https://mhari.org/wp-content/uploads/2021/12/MHARI-Survey-
Reportv31.pdf ............................................................................................... 15

National Alliance on Mental Illness, Health Reform & Mental Illness,
https://www.nami.org/getattachment/Get-Involved/NAMI-National-
Convention/Convention-Program-Schedule/Hill-Day-2017/FINAL-Hill-
Day-17-Leave-Behind-all-(1).pdf (Last accessed Mar. 5, 2023). ................ 18

National Alliance on Mental Illness, *The Doctor is Out: Continuing Disparities in
Access to Mental and Physical Health Care* (Nov. 2017),
https://www.nami.org/Support-Education/Publications-Reports/Public-
Policy-Reports/The-Doctor-is-Out/DoctorIsOut. ......................................... 13

National Institute on Drug Abuse, Criminal Justice DrugFacts,
https://nida.nih.gov/publications/drugfacts/criminal-justice (Last accessed
Mar. 5, 2023) ................................................................................................. 12

Press Release, The White House, Dr. Rahul Gupta Releases Statement on CDC's
New Overdose Death Data (Jan. 11, 2023), https://www.whitehouse.gov
/ondcp/ briefing-room/2023/01/11/dr-rahul-gupta-releases-statement-on-
cdcs-new-overdose-death-data-2/.................................................................. 13

State of Rhode Island, Office of the Health Insurance Commissioner, Market
Conduct Examinations, https://ohic.ri.gov/regulations-and-enforcement-
actions/market-conduct-examinations (Last visited Mar. 10, 2023)............ 10

Substance Abuse and Mental Health Services Administration, *Behavioral Health
Barometer: Rhode Island, Volume 6*, 27(2020), https://www.samhsa
.gov/data/sites/default/files/reports/rpt32856/RhodeIsland-BH-
Barometer_Volume6.pdf.. ............................................................................ 15

United States Government Accountability Office, *Behavioral Health: Research
on Health Care Costs of Untreated Conditions is Limited* (Feb. 2019),
https://www.gao.gov/assets/gao-19-274.pdf.. ................................................. 3

World Health Organization, *Comprehensive Mental Health Action Plan 2013-2030* (Sept. 21, 2021), https://www.who.int/publications/i /item/9789240031029. ..................................................................................... 1

## INTRODUCTION AND INTERESTS OF AMICI CURIAE

This case addresses whether insurers regulated under ERISA may deny access to mental health and substance use disorder services based on internal guidelines that are inconsistent with generally accepted standards of care (GASC) and state law. Amici curiae States of Rhode Island, Colorado, Connecticut, Delaware, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New York, Oregon, Vermont, Washington, and the District of Columbia submit this amicus brief in support of Plaintiffs-Appellees and their petition for rehearing en banc because of the serious implications of this case for access to mental health and substance use disorder treatment in the States and for enforcement of the rights of beneficiaries enrolled in ERISA-governed plans.

The Amici States have several important interests in this case. First, Amici States have an interest in ensuring that their residents have access to treatment for mental health and substance use disorder services consistent with GASC and any statutory mandates, including members of the plaintiff classes. Insufficient access to these services can have severe consequences, including unnecessary disability, unemployment, homelessness, inappropriate incarceration, and even death.[1] These

---

[1] World Health Organization, *Comprehensive Mental Health Action Plan 2013-2030* (Sept. 21, 2021), https://www.who.int/publications/i/item/9789240031029.

1

consequences can be devastating for individuals in need of treatment as well as their families and communities.

The panel's decision here, if it is left to stand, may exacerbate the difficulties that many patients face in accessing medically necessary treatment for mental health and substance use disorder services, and thus increase the public health risks and dangers that result from such lack of treatment access. For example, in 2022, Mental Health America reported that 54% of people with health insurance still did not receive necessary mental health treatment, indicating that barriers to treatment among insured populations are widespread.[2] But the panel decision here weakens an important remedial avenue for insurance beneficiaries when insurers deny care for medically necessary services based on clinical guidelines that fall below GASC or state statutory requirements.

Second, when health plans and administrators, like United Behavioral Health (UBH), limit access to mental health and substance use disorder services based on inadequate and illegal guidelines, States are frequently left to bear the cost. Untreated mental health needs are associated with increased health care utilization in the form of emergency care and more severe and expensive health care

---

[2] Mental Health America, Access to Care Data 2022, https://mhanational.org/issues/2022/mental-health-america-access-care-data (Last accessed Mar. 5, 2023).

2

interventions.[3] These costs frequently fall to the States as payers of last resort. But when States pay for such treatment costs after inappropriate denials of insurance coverage, they are paying again for the very treatment that their insured populations have already purchased coverage—here, treatment of mental health or substance use disorder needs to generally accepted standards of medical care. Moreover, States also bear increased costs to public safety, public health, and social programs that result from unmet care needs.

Third, the panel decision held that the use of a reprocessing remedy was insufficient to meet the commonality requirement under Federal Rule of Civil Procedure 23 and that the establishment of a reprocessing remedy was beyond the rights afforded to beneficiaries under ERISA. This decision will significantly hinder ongoing enforcement of beneficiary rights under ERISA-regulated plans. Requiring individualized analysis of harm for class members will pose barriers to class certification in matters addressing beneficiary rights under these plans. Amici States have limited tools to regulate ERISA plans and have an interest in effective

---

[3] A 2019 report by the U.S. Government Accountability Office found that the majority of scientific studies reviewed in the report found a positive correlation between untreated mental illness and substance use disorder in adults and higher health care expenditures. United States Government Accountability Office, *Behavioral Health: Research on Health Care Costs of Untreated Conditions is Limited* (Feb. 2019), https://www.gao.gov/assets/gao-19-274.pdf.

enforcement of beneficiary rights for the benefit of State residents and the States' fiscal health.

## ARGUMENT

In overturning substantial portions of the district court's judgment, the panel decision creates barriers to access mental illness and substance use disorder treatment across all three plaintiff classes. Despite the plain text of ERISA and clear Ninth Circuit case law that previously granted reprocessing as a remedy, the panel found that reprocessing was unavailable and outside the scope of the remedies available under ERISA. However, under ERISA, plaintiffs are entitled to seek enforcement of their rights under the plan, which includes the right to have claim determinations made according to the correct standard. The natural and proper remedy in such a case is reprocessing by the plan administrator. We agree with the plaintiffs that rehearing en banc is necessary to remedy this error.

The panel's decision seriously undermines current and future plan beneficiaries' ability to enforce their rights. Although states can set some standards to protect beneficiaries from harmful insurer interpretations of plan benefits, resource constraints mean that not all violations can be addressed through state action alone. Reprocessing is an important legal remedy to ensure that violations are sufficiently addressed. Seeking relief through individualized determinations can be costly and complex, and internal appeals processes often work against consumer

interests. When violations in plan criteria and guidelines occur, many beneficiaries will ultimately not obtain the services they need because of these challenges.

Fundamentally, the panel's decision unduly restricts behavioral health coverage for State residents. The human and financial toll associated with unmet mental illness and substance use disorder treatment is staggering. Individuals who are unable to access treatment often experience avoidable disability, encounters with the criminal justice system, poverty, worse health outcomes, and even death. Unfortunately, in light of the ongoing mental health impacts of the COVID-19 pandemic and the opioid crisis, more individuals are struggling to access the resources they need. At the same time, States bear the cost when insurers fail to meet their obligations to beneficiaries through increased health care utilization, public safety costs, and social programming. Because of the exceptional importance of these issues, the panel decision should be reconsidered en banc.

## I. Denying Access to a Reprocessing Remedy Denies Access to Care for Members of the Plaintiff Classes and Creates Barriers to Effective Enforcement of ERISA Plans.

The Amici States agree with the plaintiffs that rehearing en banc remains warranted after the issuance of the panel's corrected decision, in part because of the panel's decision to deny access to a reprocessing remedy. Somewhat incongruously, the panel decision cited to multiple prior decisions of this Court that ordered a reprocessing remedy—i.e., ordered a remand to the administrator for reevaluation as

the sole remedy—while at the same time concluding that "a remand to the administrator for reevaluation is a *means* to the ultimate remedy" rather than an available remedy under ERISA. *Wit v. United Behav. Health*, 58 F.4th 1080, 1094 (9th Cir. 2023).

This conclusion is belied by ERISA's plain language and pre-panel decision precedent from this Court. As the panel acknowledged, under ERISA, "'[a] participant or beneficiary can also bring suit generically to "enforce his rights" under the plan . . .'" *Wit*, 58 F.4th at 1094 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)). Here, the plaintiffs brought suit *generically* to enforce their rights to have claims determined in accordance with GASC and state law—as ERISA allows them to do. They obtained that broadly applicable remedy from the district court's decision, and the remand to the administrator therefore fully satisfies their request for relief. After the generic remedy is obtained, the correct process to receive actual benefits in an analogous *individual claim* is to remand for reprocessing. *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 1996) ("remand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination."). Indeed, under prior Ninth Circuit precedent, remand was equally

available to a class and posed no problem at all to the class certification. *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1008, 1013–15 (9th Cir. 1997).

Subsequent developments in class action law do not disturb this result. Unlike the ordered procedure in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366-67 (2011), the district court's decision here kept defendants in the same position with respect to each individual class member. Remand is the remedy defendant insurers would incur if each claim had been separately brought. There are therefore no problems posed by strictures of the Rules Enabling Act—ERISA expressly entitles the plaintiffs to the determination of rights under the plan by a court, even if the ultimate decision on benefits is left to the administrator. Because the plaintiff is receiving the same remedy and the defendant the same defense opportunities, and because the plaintiffs' entitlement to reprocessing is both a contested issue and fully resolves the dispute between the plaintiffs and the insurer, seeking a reprocessing remedy should be a sufficient basis for class certification. Defeating the ability of class plaintiffs to "bring suit generically to 'enforce [their] rights' under the plan," *Davila*, 542 U.S. at 210, would thus frustrate the plain language of ERISA.

The panel's decision here would also deny tens of thousands of class members, across all three classes in this case, access to the reprocessing of their claims under the updated guidelines. But this is precisely the relief to which plaintiffs are entitled, i.e., evaluation of each claim for service under the correct generally

accepted standard of care. Even if an individual plaintiff's claim is ultimately denied, that plaintiff will have received the appropriate relief under ERISA. Requiring individualized determinations of benefit denials to trigger the availability of reprocessing, in this and future cases, would significantly complicate the process to enforce plan terms that guarantee meaningful access to care.

Moreover, it would raise enforcement burdens on the States. Although ERISA generally preempts state law related to employer benefit plans, it contains a savings clause permitting States to retain certain authority over insurers. 29 U.S.C. § 1144(b)(2)(A). Core to this retained authority are requirements that insurers insure "against additional risks," "offer their insureds additional benefits," and adopt procedures that "affect the likelihood that a disputed claim will ultimately be deemed valid." *Sgro v. Danone Waters of N. Am., Inc.,* 532 F.3d 940, 943–44 (9th Cir. 2008); *see also Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 361 (2002) (state law allowing insured to request independent clinical review of benefits denial saved from preemption); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 730, 758 (1985) (state law requiring coverage for mental health saved from preemption).

The Amici States exercise this authority regularly, and many of the States have enacted provisions to protect beneficiaries from insurer interpretations that could deny their citizens access to behavioral health care and substance use disorder care. *See, e.g.,* R.I. Gen. Laws § 27-38.2-1(d), (g) (requiring parity with somatic

health and use of American Society for Addiction Medicine (ASAM) criteria); Cal. Ins. Code § 10144.5 (requiring use of "generally accepted standards of mental health and substance use disorder care"); Colo. Rev. Stat. § 10-16-104(5.5)(a)(I)(B) (requiring use of ASAM); Conn. Gen. Stat. § 38a-488c (parity required for individual policies); § 38a-514c (parity required for group policies); § 38a-591c(a)(3) (substantive substance use disorder treatment criteria); Del. Code Ann. tit. 31, § 525(d)(1)(c), (d) (requiring use of ASAM); 215 Ill. Comp. Stat. § 5/370c(b)(3) (requiring use of ASAM criteria or equivalent); Md. Code Ann., Ins., § 15-802(d)(5) (requiring use of ASAM); N.H. Rev. Stat. Ann. § 420-J:16 (requiring use of ASAM among managed care entities); N.J. Stat. Ann. § 17:48-6v (requiring parity with medical/surgical benefits); N.J. Admin. Code § 10:163-2.1 (requiring use of ASAM); N.Y. Ins. Law §§ 3216(i)(31)(E), (i)(35) (requiring parity with medical/surgical benefits); § 4902 (requiring use of designated evidence-based and peer reviewed clinical review tool); Tenn. Code Ann. § 56-7-2360(b) (requiring use of ASAM or other evidence-based clinical guidelines); 28 Tex. Admin. Code § 3.8011 (requiring compliance with guidelines issued by the Texas Commission on Alcohol and Drug Abuse); Wash. Admin. Code § 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 (requiring use of ASAM criteria or GASC for any services not governed by ASAM); W. Va. Code §§ 33-15-4r(d), (k); 33-16-3cc(d), (k); 33-24-7r(d), (k); 33-25-8o(d), (k); 33-25A-8r(d), (k) (requiring use of a tool developed by the Insurance Commissioner). These

9

provisions are examples of state insurance regulation that require insurers to provide a basic level of coverage for behavioral health and substance use disorder treatments.

States make considerable efforts to enforce these laws, but state resources necessitate that these enforcement efforts do not always reach all market participants. Many states have insurance regulators that enforce requirements on insurers through administrative processes. *See, e.g.,* R.I. Gen. Laws § 42-14.5-3(p); Cal. Ins. Code § 10144.5(j); Del. Code Ann. tit. 31, § 525(d)(1)(f); N.H. Rev. State. Ann. § 420-J:16 Tenn. Code Ann. § 56-2-305; Wash. Admin. Code § 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. Deep examinations of insurer behavior are often periodic—for example, Rhode Island conducted a review of the identical behavior complained of by the plaintiff class by United Behavioral Health in 2020, along with similar exams covering provision of behavioral health services by two other insurers, but next conducted an examination in 2022, which focused on network adequacy, a separate problem.[4] And between 2019 and 2020, the Illinois Department of Insurance conducted five (5) market conduct examinations regarding compliance with mental health and substance use disorder coverage and parity laws.[5] State resources, even when efficiently and effectively deployed, can surveil only some insurer behavior.

---

[4] State of Rhode Island, Office of the Health Insurance Commissioner, Market Conduct Examinations, https://ohic.ri.gov/regulations-and-enforcement-actions/market-conduct-examinations (Last visited Mar. 10, 2023).

[5] Illinois Department of Insurance, *Compliance Actions Under State and Federal Mental Health and Substance Use Disorder Coverage and Parity Laws* (Aug. 2020),

If reprocessing is not available as a remedy on a class-wide basis, there is no guarantee that individual claims will cause insurers to adhere to plan terms. Substantial barriers exist for individuals to seek relief on an individualized basis. The administrative appeals process is often time-consuming, complicated, and expensive. Research based on data from qualified health plans offered on HealthCare.gov found that less than two-tenths of one percent of consumers appealed denied claims with their insurers in 2021.[6] Few beneficiaries avail themselves of their rights under the ERISA administrative process despite the fact that once an appeal reaches external review, beneficiaries frequently receive favorable determinations.[7] Initial determinations are therefore left to stand in the vast majority of cases, allowing plans to deny care without consequence. A nationally representative 2015 study found that 72% of consumers did not understand their rights to appeal a coverage determination.[8] Systemic breaches of fiduciary duty in

---

https://idoi.illinois.gov/content/dam/soi/en/web/insurance/sites/insurance/reports/reports/idoi-hfs-annual-report-compliance-mental-health-and-substance-coverage-and-parity-laws-08-2020.pdf.

[6] Karen Pollitz, *Consumer Appeal Rights in Private Health Coverage*, KAISER FAMILY FOUNDATION (Dec. 10, 2021), https://www.kff.org/private-insurance/issue-brief/consumer-appeal-rights-in-private-health-coverage/.

[7] Geraldine Dallek & Karen Pollitz, *External Review of Health Plan Decisions: An Update*, KAISER FAMILY FOUNDATION (May 2000), https://www.kff.org/wp-content/uploads/2013/01/external-review.pdf.

[8] Consumer Reports National Research Center, *Surprise Medical Bills Survey* (May 5, 2015), https://advocacy.consumerreports.org/wp-content/uploads/2015/05/CY-2015-SURPRISE-MEDICAL-BILLS-SURVEY-REPORT-PUBLIC.pdf.

plan terms related to the provision of care to individuals who are living with untreated or under-treated mental health and substance use disorders, a disproportionate number of whom are experiencing additional challenges such as poverty, homelessness, and encounters with the criminal justice system, are particularly likely to go unaddressed.[9]

By eliminating the opportunity for class-wide reprocessing, the panel decision cuts against ERISA's intended goal of establishing "standards of conduct, responsibility and obligations for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, **and ready access to the Federal courts**." 29 U.S.C. § 1001(b) (emphasis added). This has significant implications for the viability of enforcing patient rights under ERISA plans.

## II. The Panel Decision Exacerbates Inadequate Access to Mental Health and Substance Use Disorder Services in the Amici States.

Rehearing en banc is further warranted because of the impact the decision will have in contributing to the shortfall in mental illness and substance use disorder coverage for the States' residents. The panel's deference to UBH's interpretation—

---

[9] *See e.g.,* American Psychological Association, *Health and Homelessness* (2011), https://www.apa.org/pi/ses/resources/publications/homelessness-health (finding that individuals experiencing homelessness have rates of mental illness twice that of the general public); National Institute on Drug Abuse, Criminal Justice DrugFacts, https://nida.nih.gov/publications/drugfacts/criminal-justice (Last accessed Mar. 5, 2023) (estimating that 65% of the U.S. prison population has an active substance use disorder).

that the plan guidelines do not require consistency with GASC—could greatly narrow the services available to beneficiaries based on arbitrary criteria. The panel's decision limits access to medically necessary health care, to the detriment of the States and their residents.

Access to behavioral health services in the Amici States is already inadequate to meet demand. Nearly half of the 60 million Americans with mental health conditions go without care,[10] and the need for these services is increasing. Since the beginning of the pandemic, mental illness generally, and among adolescents in particular, has been on the rise.[11] Meanwhile, the overdose epidemic continues to devastate communities. The White House Office of National Drug Control Policy estimates 107,477 overdose deaths in the 12-month period ending August 2022.[12] Insufficient access to services to treat mental illness and substance use disorder leads

---

[10] National Alliance on Mental Illness, *The Doctor is Out: Continuing Disparities in Access to Mental and Physical Health Care* (Nov. 2017), https://www.nami.org/Support-Education/Publications-Reports/Public-Policy-Reports/The-Doctor-is-Out/DoctorIsOut.

[11] *See generally, e.g.*, Matt Richtel, *It's Life or Death: The Mental Health Crisis Among U.S. Teens*, N.Y. TIMES (Apr. 23, 2022), https://www.nytimes.com/2022/04/23/health/mental-health-crisis-teens.html.

[12] Press Release, The White House, Dr. Rahul Gupta Releases Statement on CDC's New Overdose Death Data (Jan. 11, 2023), https://www.whitehouse.gov/ondcp/briefing-room/2023/01/11/dr-rahul-gupta-releases-statement-on-cdcs-new-overdose-death-data-2/.

to unnecessary disability, unemployment, homelessness, inappropriate incarceration, and even death.[13]

In Rhode Island, 59.1% of individuals with mild mental illness and 38.3% of individuals with severe mental illness did not receive treatment in 2019.[14] Further, from 2011 to 2020, Rhode Island saw a 108% increase in overdose fatalities.[15] Rhode Island's annual accidental drug overdoses increased from 190 in 2011 to 397 in 2020.[16] In 2020, opioid overdoses killed 2,944 people in Illinois, a nearly 200% increase compared to 2013.[17] In Connecticut, there was a 327% increase in unintentional overdose fatalities from 2012 to 2021, with 1,524 overdose deaths in 2020.[18] In New York, 850,000 adults reported unmet need for mental health

---

[13] *Supra* note 2.

[14] Kaiser Family Foundation, Adults with Mental Illness in Past Year Who Did Not Receive Treatment, 2018-2019, https://www.kff.org/other/state-indicator/adults-with-mental-illness-in-past-year-who-did-not-receive-treatment/?currentTimeframe=0&sortModel=%7B%22colId%22:%22Location%22,%22sort%22:%22asc%22%7D (Last accessed Mar. 5, 2023).

[15] Centers for Disease Control and Prevention, National Center for Health Statistics. Multiple Cause of Death Files 1999-2020 on CDC WONDER Online Database, released in 2021, http://wonder.cdc.gov/mcd-icd10.html (Last accessed Mar. 5, 2023) (overdose fatalities, excluding murders).

[16] *Id*.

[17] Illinois Department of Public Health, *Statewide Semiannual Opioid Report* (Aug. 2021), https://dph.illinois.gov/content/dam/soi/en/web/idph/publications/idph/topics-and-services/opioids/idphdata/idph-semiannual-opioid-report-august-2021.pdf.

[18] Connecticut Department of Public Health, *Unintentional Drug Overdose Deaths in Connecticut: A Fact Sheet – 2021* (May 2022), https://portal.ct.gov/-/media/DPH/Injury-Prevention/Opioid-Overdose-Data/Fact-Sheets/2021-Fact-Sheet_Unintentional-Drug-Overdose-Deaths_Updated-on-5-18-2022.pdf.

14

treatment in 2019, including nearly 300,000 who reported not receiving care because of cost.[19] Between 2018 and 2019, 204,000 adults in Illinois, representing nearly 40% of those seeking care, reported unmet mental health needs due to cost.[20]

Access to care remains a problem even among individuals with insurance, in large part because of inappropriate denials of care. In 2022, just 2.9% of Rhode Islanders were uninsured, down from 4% in 2020.[21] A 2020 survey among behavioral health providers in Rhode Island found that denials of mental health care among their insured patients was the second largest barrier to access, following lack of insurance.[22] And despite continued increases in overdose and persistently high rates of insurance among Rhode Islanders, the number of people in substance use treatment decreased from 14,269 in 2015 to 8,609 in 2019, indicating access barriers among the insured.[23] In response to the ongoing overdose crisis, Rhode Island was

---

[19] Kaiser Family Foundation, *Adults Reporting Unmet Need for Mental Health Treatment in the Past Year Because of Cost, 2018-2019*, https://www.kff.org/other/state-indicator/adults-reporting-unmet-need-for-mental-health-treatment-in-the-past-year-because-of-cost/?currentTimeframe=0&sortModel=%7B%22colId%22:%22Location%22,%22sort%22:%22asc%22%7D (Last accessed Mar. 10, 2023).

[20] *Id.*

[21] HealthSourceRI, "Rhode Island Achieves Lowest Ever Uninsured Rate, Survey Finds" (Aug. 30, 2022), https://healthsourceri.com/rhode-island-achieves-lowest-ever-uninsured-rate-survey-finds/.

[22] Mental Health Association of Rhode Island, *Network Adequacy: A Survey of Rhode Island's Behavioral Health Provider Network* (2021), https://mhari.org/wp-content/uploads/2021/12/MHARI-Survey-Reportv31.pdf.

[23] Substance Abuse and Mental Health Services Administration, *Behavioral Health Barometer: Rhode Island, Volume 6*, 27(2020),

one of a number of states that enacted legislation requiring compliance with ASAM criteria for substance use treatment coverage, as well as parity in mental health coverage standards with medical/surgical standards. Testimony at the hearing for the bill reported that "over 250 individuals [were] denied prior authorization for inpatient treatment in the past year. These individuals had a prior clinical assessment based on ASAM criteria. There was no clinical reason to deny admission."[24] The Hospital Association of Rhode Island also submitted testimony that it had experience with claims being denied even after medical necessity findings, resulting in patients ultimately receiving lower levels of care.[25] Half of the reported cases belonged to UBH.[26]

Inappropriate denials of care are also costly to the States. Amici States bear the costs of mental illness and substance use disorders that remain untreated as payers of last resort and through increased social programming and public safety costs. Untreated and under-treated behavioral health needs are associated with

---

https://www.samhsa.gov/data/sites/default/files/reports/rpt32856/RhodeIsland-BH-Barometer_Volume6.pdf.

[24] Hearing on H-5837 Before the H. Comm. on Corps., 2015 Leg. (R.I. Apr. 7, 2015) (written testimony of David Spencer, Executive Director of the Drug and Alcohol Treatment Association of Rhode Island). Reproduced at Appendix 3-4.

[25] Hearing on H-5837 Before the H. Comm. on Corps., 2015 Leg. (R.I. Apr. 7, 2015) (letter by Michael R. Souza, President of the Hospital Association of Rhode Island). Reproduced at Appendix 5-7.

[26] *Id.* (32 cases out of 65).

increased rates of poverty and encounters with the criminal justice system.[27] Unfortunately, when patients are unable to access care and their conditions reach crisis levels, they often may receive treatment through only emergency care or even state prisons, at high cost to the State.

For example, the Mental Health Association of Rhode Island classified the state prison as Rhode Island's "largest 'psychiatric institution,'"[28] with 15% to 17% of the prison population having a serious and persistent mental illness, such as schizophrenia, bipolar disorder and posttraumatic stress disorder.[29] The cost of incarceration per inmate in Rhode Island can be as high as $182,396 annually.[30]

---

[27] *See, e.g.,* Kevin M. Simon & Michaela Beder, *Addressing Poverty and Mental Illness*, 23 PSYCHIATRIC TIMES 7 (2018) ("The evidence is strong for a causal relationship between poverty and mental health."); Jennifer M. Reingle Gonzalez & Nadine M. Connell, *Mental Health of Prisoners: Identifying Barriers to Mental Health Treatment and Medication Continuity*, 104 AM. J. PUBLIC HEALTH 2328 (2014) (finding that that of the 26% of inmates diagnosed with a mental health condition at some point in their lifetime, only 18% were taking medication for their condition prior to admission to prison. Further, "[i]ndividuals with untreated mental health conditions may be at higher risk for correctional rehabilitation treatment failure and future recidivism on release from prison.").

[28] Laurie-Marie Pisciotta, The Criminalization of Mental Illness (Dec. 6, 2020), https://mhari.org/the-criminalization-of-mental-illness/.

[29] G. Wayne Miller, *Incarcerated: Hundreds who need mental-health care forced into ACI*, PROVIDENCE J (Dec. 13, 2014), https://www.providencejournal.com/story/lifestyle/health-fitness/2014/12/14/20141213-mental-health-in-rhode-island-hundreds-who-need-care-forced-into-aci-ece/33827141007/.

[30] *Id.*

17

Untreated mental illness and substance use disorder harms State financial health through loss of economic productivity. The National Alliance on Mental Health estimates that $300 billion is lost every year though lost productivity and associated costs related to absenteeism and employee turnover.[31]

Greater access to behavioral health treatment is critical to improve the wellbeing of individuals and communities, while also reducing the financial burdens on the Amici States.

## CONCLUSION

This case presents extraordinarily important questions on the duties and responsibilities of insurers and plan administrators and the means by which beneficiaries may enforce their rights under those plans. For the reasons described above and those set forth by plaintiffs, the Amici States urge this Court to grant the petition for rehearing en banc.

---

[31] National Alliance on Mental Illness, Health Reform & Mental Illness, https://www.nami.org/getattachment/Get-Involved/NAMI-National-Convention/Convention-Program-Schedule/Hill-Day-2017/FINAL-Hill-Day-17-Leave-Behind-all-(1).pdf (Last accessed Mar. 5, 2023).

18

March 17, 2023                          Respectfully submitted,

                                        *s/ Michael Field*
                                        Peter F. Neronha
                                           *Attorney General of Rhode Island*
                                        Michael Field
                                           *Assistant Attorney General*
                                        Sarah W. Rice
                                           *Assistant Attorney General*
                                        Julia Harvey
                                           *Special Assistant Attorney General*
                                        RHODE ISLAND OFFICE OF THE
                                           ATTORNEY GENERAL
                                        150 South Main Street
                                        Providence, RI 02903
                                        (401)274-4400
                                        mfield@riag.ri.gov
                                        srice@riag.ri.gov
                                        jharvey@riag.ri.gov

                                        *(Counsel listing continues on the next
                                        page)*

PHILIP J. WEISER
  *Attorney General*
  *State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

ANTHONY G. BROWN
  *Attorney General*
  *State of Maryland*
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

WILLIAM TONG
  *Attorney General*
  *State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

DANA NESSEL
  *Attorney General*
  *State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KATHLEEN JENNINGS
  *Attorney General*
  *State of Delaware*
820 N. French Street
Wilmington, DE 19801

KEITH ELLISON
  *Attorney General*
  *State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

BRIAN L. SCHWALB
  *Attorney General*
  *District of Columbia*
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

AARON D. FORD
  *Attorney General*
  *State of Nevada*
100 North Carson Street
Carson City, NV 89701

KWAME RAOUL
  *Attorney General*
  *State of Illinois*
100 West Randolph Street
Chicago, IL 60601

MATTHEW J. PLATKIN
  *Attorney General*
  *State of New Jersey*
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

AARON M. FREY
  *Attorney General*
  *State of Maine*
6 State House Station
Augusta, ME 04333

LETITIA JAMES
  *Attorney General*
  *State of New York*
28 Liberty Street
New York, NY 10005

20

ELLEN F. ROSENBLUM
  *Attorney General*
  *State of Oregon*
1162 Court Street NE
Salem, OR 97301

CHARITY R. CLARK
  *Attorney General*
  *State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
  *Attorney General*
  *State of Washington*
P.O. Box 40100
Olympia, WA 98504

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of March 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Michael Field*
Michael Field
*Assistant Attorney General*
RHODE ISLAND OFFICE OF THE
ATTORNEY GENERAL
150 South Main Street
Providence, RI 02903
(401)274-4400
mfield@riag.ri.gov

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 20-17363, 20-17364, 21-15193, 21-15194

I am the attorney or self-represented party.

**This brief contains** | 3,972 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⭕ complies with the word limit of Cir. R. 32-1.

⭕ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

🔘 is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

⭕ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⭕ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

⭕ complies with the length limit designated by court order dated | | .

⭕ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Julia Harvey | **Date** | March 17, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/22*

# APPENDIX



# RHODE ISLAND HOUSE OF REPRESENTATIVES
## 2015
### REPORT OF THE COMMITTEE ON CORPORATIONS

_6-23-2015_
DATE

Bill Number: _H-5537_ Principal Sponsor _Representative Slater_

Short Title: _____

### To the Speaker of the House

On a Motion by Representative: _Marcello_, seconded by Representative _Nardolillo_,

the Committee, by a vote of _13_ to _0_, agreed to

recommend to the House the following action on the above referenced bill: _H-5537_

- ☐ Passage
- ☑ Passage of the bill as amended or in substitution form _H-5537 SubA_
- ☐ No passage
- ☐ Without recommendation
- ☐ Held for further study

| Member | Yea | Nay | Absent | Abstain |
|---|---|---|---|---|
| Brian Patrick Kennedy - Chair | ☑ | ☐ | ☐ | ☐ |
| William W. O'Brien - Vice Chair | ☑ | ☐ | ☐ | ☐ |
| Mary Messier - Secretary | ☑ | ☐ | ☐ | ☐ |
| Stephen Casey | ☑ | ☐ | ☐ | ☐ |
| Raymond H. Johnston | ☑ | ☐ | ☐ | ☐ |
| Katherine Kazarian | ☑ | ☐ | ☐ | ☐ |
| Charlene Lima | ☐ | ☐ | ☑ | ☐ |
| Michael Marcello | ☑ | ☐ | ☐ | ☐ |
| Kenneth Marshall | ☐ | ☐ | ☑ | ☐ |
| Michael Morin | ☑ | ☐ | ☐ | ☐ |
| Robert Nardolillo III | ☑ | ☐ | ☐ | ☐ |
| Jared Nunes | ☑ | ☐ | ☐ | ☐ |
| Jeremiah O'Grady | ☑ | ☐ | ☐ | ☐ |
| Robert Phillips | ☑ | ☐ | ☐ | ☐ |
| Sherry Roberts | ☐ | ☐ | ☑ | ☐ |
| Joseph Trillo | ☑ | ☐ | ☐ | ☐ |
| Anastasia Williams | ☑ | ☐ | ☐ | ☐ |
| TOTALS | _13_ (Y) | _0_ (N) | _4_ (AB) | _0_ (AN) |

COPIES:
White-Attach to original copy of bill
Green-Room 1
Canary-Room 323
Pink-Clerk of the House
Gold-Bill file

Respectfully Submitted:

_Brian Patrick Kennedy_

Chair              Vice Chair              Secretary

1

**RHODE ISLAND GENERAL ASSEMBLY**



**House of Representatives**

## COMMITTEE ON CORPORATIONS

**BILL # H – 5837**                         **DATE:** <u>April 7, 2015</u>
**TITLE:** <u>Provide coverage for seven (7) days of residential or inpatient services
for opioid treatment to be included within the appropriate classification.</u>
**SPONSOR:** <u>Representative Serpa</u>

| NAME/Represent | Contact Info | PRO | CON |
|---|---|---|---|
| David Spencer | RATA | ✓ | |
| John Masson | Phoinex House | ✓ | |
| | | | |
| Mike Ryan | RI Council of Community Mental Health Org. | ✓ | |
| Shawn Donahue | Blue Cross Blue Shield RI | | ✓ |
| Cecelia Kelley | Hospital Assn of RI | ✗ | |
| Steve Detoy | RI Medical Soc | ✗ | |
| Elizabeth Suever | UHC | | ✓ |
| Terry Martiesian | AHIP | | ✓ |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |



**Drug and Alcohol Treatment
Association of Rhode Island**
Representing Treatment and Prevention Providers

## Testimony for H-5837

- My name is David Spencer, I'm Executive Director of the Drug and Alcohol Treatment Association of RI.

- We represent nearly 30 agencies which provide a wide range of mental health and substance abuse treatment and prevention services in this state.

- We strongly support H-5837 – which would provide at least 7 days of residential or inpatient SA treatment services.

- As you all know, Rhode Island is experiencing a serious drug overdose problem. There have been many individuals and organizations involved in attempting to address this problem. BHDDH, the Health Department and the Governor's office have all been actively involved.

- In addition, we now have Recovery coaches in nearly all of the hospital emergency rooms to help when someone who overdoses is brought in.

- We need all the help we can get to help save lives and to assist individuals getting the help they need.

- This bill H-5837 - will do that

- Recently I conducted a survey of our treatment programs to determine if there were problems with getting approvals for drug detoxification and residential services.

---

200 Metro Center Blvd. #10, Warwick, RI 02886   |   Phone: 401.521.5759 • Fax: 401.751.7850



**Drug and Alcohol Treatment
Association of Rhode Island**
Representing Treatment and Prevention Providers

- I was shocked to fund that with just a handful of programs – we had over 250 individuals being denied prior authorization for inpatient treatment in the past year.

- These individuals had a prior clinical assessment based on ASAM criteria. There was no clinical reason to deny admission.

- Massachusetts just passed similar legislation and its currently being considered in other states. The federal government is also currently considering similar legislation.

Thank you for the opportunity to testify on this important issue.

David Spencer, MBA, MPA
Executive Director



**The Hospital Association of Rhode Island**
100 Midway Road – Suite 21
Cranston, Rhode Island 02920
(401) 946-7887

April 7, 2015

The Honorable Brian Patrick Kennedy
Chairman, House Corporations Committee
State House, Room 328
82 Smith Street
Providence, RI 02903

Dear Chairman Kennedy:

The Hospital Association of Rhode Island and its members **support** bill H.5387 by Representative Patricia Serpa. The referenced legislation seeks to provide coverage for seven days of residential or inpatient treatment for opioid treatment.

HARI and its members are very concerned with the serious problems in Rhode Island surrounding the rise in unintentional overdoses from prescription opioids. We have been working with the Rhode Island Department of Health and provider community partners to reduce the misuse and abuse of opioids and other prescription drugs in our state. While the efforts have been having some success, there is still a great need to also connect individuals with necessary treatment, when needed.

Our members have strongly supported insurance coverage for anti-opioid and anti-opiate drugs, as well as drugs used for the treatment of substance use disorders. We believe this legislation is a necessary next step in supporting Rhode Islanders in need. Insurance coverage for seven days of residential or inpatient treatment for opioid addiction is needed to further address the serious rise of opioid addiction and overdoses facing our state.

We welcome the opportunity to work with you, Representative Serpa, and all interested parties to enhance the care Rhode Islanders with substance abuse disorders receive.

Thank you for your consideration on this matter.

Sincerely,

Michael R. Souza
President

5

5837

Below is a list of denials that were reported though there have been more. In all these cases medical necessity was reported during the Utilization review process and was still denied and received Lower Level of Care.

**April 2015**
BCBS            Denied detox – received Resi LOC

**March 2015**
2 BCBS          Both cases denied Detox received PHP LOC
2 UBH Exp       Both cases denied Detox received IOP LOC
1 – UBH         Denied Detox received PHP LOC
1 – NHP

**February 2015**
2 – UBH Exp   Both cases denied Detox received IOP LOC
2 - UBH

**January 2015**
3 – UBH
1 – UBH Exp

**December 2014**
6 – UBH
1 – UBH Exp
1 – Aetna
4 – NHP
1 – NHP Exp
3 – BCBS
1 – Empire BCBS – Detox Denied based on MD recommendation of Out Patient Detox

**November 2014**
6 – UBH
1 – UBH Exp
4 – NHP
3 – BCBS

**October 2014**
6 – UBH
1 – UBH Exp
2 – BCBS
5 – NHP
3 – NHP Exp
2 – Tufts

6

**September 2014**
- 3 – BCBS
- 4 – NHP
- 2 – NHP Exp
- 4 – UBH
- 2 – UBH Exp

**August 2014**
- 7 – UBH
- 4 – BCBS
- 2 – UBH Exp
- 4 – NHP
- 1 – NHP Exp

**July 2014**
- 7 – UBH
- 3 – BCBS